IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GRETCHEN KEY,

    Plaintiff,

    v.

BMW OF NORTH AMERICA, LLC,

    Defendant.

Case No. 19-cv-03366-MMC

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; AFFORDING PLAINTIFF LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE**

Before the Court is defendant BMW of North America, LLC's ("BMW") "Motion to Dismiss Plaintiff Gretchen Key's First Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(B)(6)," filed October 14, 2019. Plaintiff Gretchen Key ("Key") has filed opposition, to which BMW has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the First Amended Complaint ("FAC"), Key alleges the following, which, for purposes of the instant motion, the Court assumes true.

BWM vehicles are "equipped with onboard diagnostic and data gathering equipment" that "gathers data from numerous data points and sensors" in the vehicles. (See FAC ¶ 8.) BMW "distributes to its dealerships diagnostic software and vehicle interface equipment" that are used by dealerships to "extract data" from vehicles, which data dealerships use "primarily" to "diagnos[e] the root cause of vehicle malfunctions and vehicle defects." (See FAC ¶ 9.) Data extracted by dealerships is "forwarded" to BMW,

---

[1] By order filed December 16, 2019, the Court took the matter under submission.

which data BMW "collects and archives." (See FAC ¶ 10.)

Key owns a 2008 BMW 750LI. (See FAC ¶ 35.) In December 2017, BMW published a "safety recall," in which it "offered to fix a problem with the electric door latch which could cause the latch to unexpectedly open while driving." (See FAC ¶ 36.) In July 2018, Key took her vehicle to Weatherford BMW for the "repairs set forth in the recall" and Weatherford BMW performed such repairs (see FAC ¶ 37); in so doing, Weatherford BMW "extracted diagnostic data" from the vehicle (see FAC ¶ 2).

After the recall work was performed, Key "experienced a series of additional problems with the vehicle" (see FAC ¶ 2), and, on four occasions, took her vehicle to Weatherford BMW "complaining" about such problems, which she identified on those occasions as, respectively, "problems with the airbag light and driver's side power window," "problems with the door brakes," "problems with the door locks," and "light switch and sensor faults and front and rear sides" (see FAC ¶¶ 38-41). On the first three such occasions, Key attributed the problems to Weatherford BMW's "recall" work (see FAC ¶¶ 38-40) and, on the fourth such occasion, to either the recall work or repairs performed on the third such occasion (see FAC ¶ 41). On the first, second, and fourth such occasions, Weatherford BMW "extracted" data from Key's vehicle. (See FAC ¶¶ 38, 39, 41.)

Although Key "notified" Weatherford BMW that it had "damaged" her vehicle, Weatherford BMW "denied having caused any damage" and "refused to pay for the repairs." (See FAC ¶ 43.)[2] Thereafter, in March 2019, Key, through counsel, contacted

---

[2] BMW has requested, and Key does not object, that the Court take judicial notice of "repair orders" prepared by Weatherford BMW on each of the four occasions referenced above. (See Def.'s Req. for Judicial Notice Exs. A-E.) Said documents appear to indicate Weatherford BMW, with one exception, performed the repairs requested by Key at no charge, the one exception being the fourth of the above-referenced occasions, when Weatherford BMW determined Key's "light module" should be replaced, and the repair orders do not indicate such work was performed. (See id.) In light of such repair orders, as well as Key's allegation that Weatherford BMW and BMW "initially did pay for some of the repair work" (see FAC ¶ 2), the Court understands Key to be alleging Weatherford BMW refused to replace the light module at no cost to her.

2

BWM to request it provide her "the data that BMW [was] in possession of relating to [Key's] vehicle," but BMW "refused, stating that 'a demand for production or a subpoena for production may only be issued in connection with pending litigation.'" (See FAC ¶ 44.)

Key then took to the vehicle to an "independent repair facility," which was "unable to diagnose or repair the vehicle" because BMW did not "allow" it to "access all of the vehicle diagnostic data." (See FAC ¶ 45.) Key next took her vehicle to Concord BMW, which "identified a variety of electrical and other problems" and "performed repairs" for which it charged $1997.52, an amount Key paid. (See FAC ¶ 47.)

As of August 30, 2019, the date on which Key filed the FAC, her vehicle "continues to experience problems that [she] attributes to the original recall repair." (See FAC ¶ 56.)

Based on the above allegations, Key asserts against BMW two claims for relief, specifically, a claim under § 17200 of the California Business & Professions Code and a common law conversion claim. Both claims are based on BMW's alleged refusal in March 2019 to provide Key with the data Weatherford BMW had extracted from her vehicle. According to Key, such data "can reveal when the fault codes relating to the further damage were first detected," and that, "[i]f the fault codes were first detected while the vehicle was being serviced by Weatherford BMW, [Key] would be able to prove that Weatherford BMW caused the further damage while her BMW [v]ehicle was under warranty and [she] would be able to compel Weatherford BMW, if necessary by legal action, to pay for the expenses associated with repairing said further damage." (See FAC ¶ 50.)[3]

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of

---

[3] Key does not allege the time period during which her vehicle was under warranty.

the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

In her first claim, which, as noted, asserts a violation of § 17200, Key alleges BMW's failure to provide the data is "unfair" and "unlawful" (see FAC ¶¶ 75, 87) and that she has "lost money or property" as a result, specifically, the $1997.52 she paid Concord BMW for repairs (see FAC ¶ 54) and the data itself (see FAC ¶ 53). In her second claim, which, as noted, asserts a claim of conversion, Key alleges she owns the "data collected from [her vehicle]" (see FAC ¶ 105), which data BMW converted when it "refused to return [it] upon [Key's] demand" (see FAC ¶ 106).

BMW argues Key has failed to allege facts to support a finding that, for purposes of § 17200, she lost money or property as a result of BMW's failure to provide to her the data extracted from her vehicle, see Cal. Bus. & Prof. Code § 17204 (limiting standing under § 17200 to persons who have "lost money or property as a result of the unfair

4

competition") and that, for purposes of a conversion claim, she has failed to allege facts to support a finding that she has a property right in the extracted data, see Silvaco Data Systems v. Intel Corp., 184 Cal. App. 4th 210, 238 (2010) (holding "to state a claim for conversion, the plaintiff must identify some property in which [s]he had property rights with which the defendant could, and did, interfere").

First, with regard to Key's payment to Concord BMW, BMW argues Key has failed to allege facts to support a finding such loss of money was "caused by" BMW's failure to provide the data. See Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 326 (2011) (holding plaintiff asserting § 17200 claim must show loss was "caused by" conduct plaintiff alleges to be in violation of § 17200). In the FAC, Key states she paid Concord BMW to "fix the problems with her vehicle that she alleges were caused by Weatherford BMW." (See FAC ¶ 54.) The FAC, however, includes no facts to support a finding that BMW played any role in the allegedly faulty work performed by Weatherford BMW, i.e., no facts to show BMW caused the problems Key paid Concord BMW to fix. To the extent Key alleges a belief that the data will assist her in determining whether she has grounds to seek legal recourse against Weatherford BMW, such belief is speculative, and, in any event, even if the data could be used to support a claim against Weatherford BMW, Key cites no authority suggesting BMW can be said to have caused the claimed economic loss by reason of its having declined to assist Key in her efforts to determine if she has grounds to seek relief from Weatherford BMW. Accordingly, Key has failed to show she can base her § 17200 claim on her payment to Concord BMW.

Next, BMW argues the data extracted from Key's vehicle does not constitute property in which she has an ownership interest. Under California law, "information is not property unless some law makes it so." See Silvaco, 184 Cal. App. 4th at 239. In other words, if "information" is not "made property by some provision of positive law, [it] belongs to no one." See id. at 239 n.22. Consequently, it "cannot be converted or stolen," see id., or, by logical extension, "lost" for purposes of § 17204. Here, Key cites no authority to support a finding that data extracted from vehicles is deemed property, let

alone property of the vehicle owner, and, indeed, the only authority the Court has located would support a finding to the contrary. See, e.g., UCAR Technology (USA) Inc. v. Li, 2018 WL 2555429, at *7 (N.D. Cal. June 4, 2018) (dismissing § 17200 claim where plaintiff alleged defendants had "erased" from plaintiff's computer "confidential and proprietary information," as plaintiff failed to show such "information" was "made property by some provision of positive law").[4] Accordingly, Key has not shown she can base either her conversion claim or § 17200 claim on the asserted loss of such data.

## CONCLUSION

For the reasons stated above, BMW's motion to dismiss is hereby GRANTED, and the First Amended Complaint is hereby DISMISSED.

If Key wishes to file a Second Amended Complaint in an effort to cure the deficiencies identified above, she shall file such pleading no later than January 31, 2020.

In light of the above, the Case Management Conference is hereby CONTINUED from January 24, 2020, to April 10, 2020, at 10:30 a.m. A Joint Case Management Statement shall be filed no later than April 3, 2020.

**IT IS SO ORDERED.**

Dated: January 13, 2020

MAXINE M. CHESNEY
United States District Judge

---

[4] In her opposition, Key cites a California statute and regulation that require automobile repair dealers to provide to a customer an invoice containing specified information and to retain a copy of the invoice. See Cal. Bus. & Prof. Code § 9884.8 (providing invoice must, inter alia, "describe all service work done and parts supplied"); Cal. Code Regs. tit. 16, § CCR § 3356(c) (providing invoice must, inter alia, "describe . . . [a]ll services and repairs, including any diagnostic or warranty repairs"); see also Cal. Bus. & Prof. Code § 9884.11 (providing dealers must retain invoices for three years, during which time specified government officials have right to inspect them). The cited statute and regulation, however, do not address who, if anyone, owns data extracted from a vehicle.